# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| RICHARD COLE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | No.  16 C 7845 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| MICHAEL LEMKE, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Cole ("Cole"), an inmate at Stateville Correctional Center ("Stateville"), brings this action under 42 U.S.C. § 1983 against Warden Michael Lemke ("Lemke"), Wexford Health Sources Inc. ("Wexford"), Saleh Obaisi, M.D. ("Dr. Obaisi"), Shanel Barnett ("Barnett"), and Ann H. Davis, M.D. ("Dr. Davis").  Cole claims that Wexford violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs when it refused to order the requisite testing to diagnose Cole with pneumonia, disregarded pain and suffering associated with Cole's pneumonia, and by failing to have a doctor physically present at Stateville between the hours of 11:00 p.m. and 7:00 a.m. (Count I).  Cole also alleges that Dr. Obaisi, Dr. Davis, and Barnett violated his Eighth Amendment rights when they delayed the diagnosis and treatment of Cole's pneumonia and further disregarded pain and suffering he had as a result of the pneumonia.  (Count II).  Cole finally claims that Lemke acted in violation of his Eighth Amendment rights by confiscating

Cole's winter coat and disregarding his pain and suffering stemming from his exposure to the cold and rain. (Count III).

Lemke and Barnett (collectively "IDOC Defendants") moved for summary judgment on August 13, 2018. (Dkt. 115). Wexford, Dr. Obaisi, and Dr. Davis (collectively "Wexford Defendants") moved for summary judgment on August 16, 2018. (Dkt. 117). For the following reasons, the Court grants summary judgment in favor of both the IDOC Defendants and the Wexford Defendants.

## BACKGROUND

The following facts are not in dispute. Cole is an inmate at Stateville and has been housed there since 2006. (Dkt. 116, at ¶ 1). At all relevant times, Cole was housed in Stateville's C-House. *Id.* Lemke served as the warden of Stateville until January 1, 2014. *Id.* at ¶ 2. Barnett was employed by the IDOC as a Correctional Medical Technician at Stateville throughout the relevant time period. *Id.* at ¶ 3. Dr. Obaisi served as the Medical Director of Stateville at all relevant times. (Dkt. 126, at ¶ 2). Dr. Davis is a licensed physician who served as a staff physician at Stateville from April 2013 to April 2014. *Id.* at ¶ 4. Wexford is a corporation that provides health care services to Stateville. *Id.* at ¶ 3.

Inmates in IDOC custody are issued various articles of clothing and are also able to buy additional items from the commissary. (Dkt. 116, at ¶¶ 8, 10). As of May 2013, in addition to his IDOC issued items, Cole had purchased sweat suits, boxer shorts, t-shirts, socks, skull caps, and ear warmers. *Id.* at ¶ 11. Cole also had a personal blanket which he had used to help warm himself at times. *Id.* at ¶ 15. On

May 23, 2013, Stateville staff collected all IDOC issued winter coats for inventory purposes and returned the coats in the second week of October 2013. *Id.* at ¶¶ 12-14. Though he does not remember the specific order, Lemke admits that the order to collect winter coats would have emanated from his office. *Id.* at ¶ 16. After the order was issued, Cole testified that on a single occasion he was forced to walk to and from the cafeteria in the cold and rain. (Dkt. 132, at ¶ 6); (Dkt. 116, at ¶¶ 17-19). Cole never discussed his concerns about being cold with Lemke and does not know whether Lemke was aware of his condition or the grievances he filed. (Dkt. 116, at ¶¶ 52-55). Lemke never saw Cole's grievances because the grievances were reviewed at a time which post-dated Lemke's tenure as the warden of Stateville. *Id.* at ¶¶58-59.

On or around June 4, 2013, Cole developed a cold and submitted requests for medical treatment. *Id.* at ¶¶ 20-21. Barnett was responsible for responding to inmate requests within her assigned cell block, but Barnett was not assigned to Cole's block, C-House. *Id.* at ¶¶24-27. At or around 1:30 a.m. on June 11, 2013, Cole was taken to the Health Care Unit after he reported experiencing chest pain. *Id.* at ¶ 29. Cole was given two EKGs and was placed on oxygen for treatment. *Id.* at ¶ 30. Physicians are not physically present at Stateville between 11:00 p.m. and 7:00 a.m. and Cole was therefore treated by Nurse Bernadette Ononiwu. (Dkt. 132, at ¶¶ 15-16). Dr. Obaisi was on call at all times even if he was not physically present at Stateville. (Dkt. 126, at ¶ 22). Nurse Ononiwu treated Cole in accordance with orders she received from Dr. Obaisi telephonically. *Id.* at ¶¶ 21-25. Cole was sent back to his cell between 4:00 and 5:00 a.m. and was given a medical pass to return to the Health

Care Unit later that morning. (Dkt. 116, at ¶¶ 31-32). At some time between 10:30 and 10:45 a.m., Barnett arrived at Cole's cell who informed her that he was still experiencing symptoms. *Id.* at ¶¶ 33, 36. Around 11:00 a.m. that same morning, Cole was taken to the Health Care Unit where he was treated by Dr. Davis. *Id.* at ¶ 47. No more than an hour and a half passed between the time he was seen by Barnett and the time he was brought to the Health Care Unit. *Id.* Dr. Davis treated Cole with an albuterol nebulizer, a Xopenex inhaler, an Alvesco inhaler, Levaquin, Motrin, enrolled him in Stateville's asthma clinic, and ordered a chest x-ray. *Id.* at ¶ 48. Cole's chest x-ray occurred two days later on June 13, 2013. *Id.* at ¶ 49. From that point, Cole was given weekly chest x-rays until July 8, 2013. *Id.* at ¶ 51. From June 13, 2013 to July 8, 2013, Cole remained in the Stateville infirmary until he was discharged by Dr. Obaisi. (Dkt. 132, at ¶¶ 35-38). Throughout the relevant time period, Cole was seen and treated by Dr. Obaisi and Dr. Davis ten times and received multiple rounds of x-rays and medication treatments. (Dkt. 126, at ¶¶ 62-66).

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial resting on the pleadings is not adequate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## DISCUSSION
### I. Defendants Wexford, Dr. Obaisi and Dr. Davis

To prevail on an Eighth Amendment claim for deliberate indifference to serious medical needs, an inmate must establish that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to a risk of serious harm stemming from the condition. *Arnett v. Webster,* 658 F.3d 742, 750 (7th Cir. 2011). A serious medical condition is considered "one that a physician has diagnosed as needing treatment or 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder,* 444 F.3d 579, 584-85 (7th Cir. 2006)). Beyond a serious medical condition, the inmate must show that the

defendants acted with a culpable state of mind. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wonton infliction of pain'." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Defendants' actions must be intentional or criminally reckless; neither negligence nor gross negligence is sufficient to establish liability under a theory of deliberate indifference. *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). The inmate bears the burden of establishing both the objective and subjective elements of the claim. *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008).

When the Eighth Amendment claim is further based upon a theory that defendants delayed in providing medical care, the inmate must show "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Collins v. Seeman,* 462 F.3d 757, 762 (7th Cir. 2006) (quoting *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir. 1992)). Any delays in treatment must be more than isolated incidents. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000). A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain. *Perez v. Fenoglio,* 792 F.3d 768, 777-78 (7th Cir. 2015). Simply stating that a delay in treatment caused harm is insufficient. Rather, the inmate must support his claims with "'verifying medical evidence' to establish that the delay detrimentally affected him." *Mayo v. Snyder,* 166 F. App'x 845, 848 (7th Cir. 2006) (quoting *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996)). While an inmate is guaranteed reasonable measures to protect his health and safety,

he is not able to demand specific treatment or receive the absolute best possible care. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997).

To begin, pneumonia is undoubtedly a serious medical condition. *See e.g., Leaks v. Fowler,* 2016 WL 878204, at \*7 (N.D. Ill. Mar. 8, 2016). The Wexford Defendants instead challenge the deliberate indifference prong of Cole's claim. First and foremost, Cole stumbles in demonstrating the Wexford Defendants acted with the requisite state of mind. The subjective element of a deliberate indifference claim requires that "the communication, in its content, and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health and safety.'" *Arnett v. Webster,* 658 F.3d 742, 755-56 (7th Cir. 2011) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Dr. Obaisi and Dr. Davis must have acted in an intentional or criminally reckless manner once they became subjectively aware of such a risk. *Burton*, 805 F.3d at 784. To prevail, Cole is obligated to demonstrate that each of the Defendants were individually aware of facts from which a reasonable inference could be drawn that he faced a substantial risk of serious harm and further, that the defendants actually drew that inference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Yet, "[e]ven if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010) (internal quotations omitted).

The record is devoid of any evidence to suggest that Defendants Obaisi or Davis were subjectively aware of any delay in Cole's medical treatment. *See Resel v. Fox,*

26 F. App'x 572, 576 (7th Cir. 2001). Cole certainly argues Defendants were aware: "The record demonstrates that Plaintiff made every effort to inform Defendants of his need for medical care beginning on June 4, 2013, and yet he was not seen by a health provider until June 11, 2013." (Dkt. 125, at ¶ 52). However, this lone assertion in his opposition to summary judgment notably has no cite to the record. The uncontroverted facts in the record tell a markedly different story. In Cole's own Statement of Facts, he asserts that Dr. Obaisi and Dr. Davis did not become involved in his medical care until June 11, 2013. (Dkt. 137, at ¶¶ 19, 27). Cole fails to point to anywhere in the record demonstrating either Dr. Obaisi or Dr. Davis was aware of his alleged medical needs prior to when they first interacted with him on June 11, 2013. To be liable for a delay in providing medical treatment, Plaintiff must, at the very least, establish that Defendants were aware of circumstances that would permit a reasonable inference that he faced a substantial risk. *Greeno*, 414 F.3d at 653. Here, Cole falls far short of such requirement as he has adduced no evidence to even demonstrate that Dr. Obaisi or Dr. Davis knew Cole existed prior to the time they treated him, much less that he was an inmate with a serious medical condition.

Even assuming that the doctors were aware of a substantial risk to Cole, they acted reasonably in response to the risk. *Gayton,* 593 F.3d at 620. Cole concedes that Dr. Obaisi prescribed him with Atenolol, Nitro, Tylenol, and had Cole put on oxygen in the early morning hours of June 11, 2013. (Dkt. 126, at ¶ 23). Cole further agrees that on the same day, Dr. Davis treated him and prescribed a nebulizer treatment, Levaquin, a chest x-ray, Xopenex (an inhaler), Alvesco (an inhaler), Motrin, Toradol,

and enrolled him in an asthma clinic. *Id.* at ¶ 30. Dr. Davis also diagnosed Cole with asthma and pneumonia on June 11, 2013. *Id* at ¶ 31. In total, Cole was seen and treated on five occasions by Dr. Davis and on five occasions by Dr. Obaisi. *Id.* at ¶¶ 62-63. The cumulative treatment provided to Cole amounts to a reasonable response to Cole's medical needs. *Gayton,* 593 F.3d at 620. Summary judgment in favor of Dr. Obaisi and Dr. Davis is appropriate based on the undisputed record which demonstrates that the doctors played no role in any supposed delay in Cole's treatment and that they responded appropriately once they became aware of his condition on June 11, 2013.

Cole's claims against the individual doctors fail for a separate reason. An inmate's claim must rest on more than "a mere disagreement with a doctor's medical judgment. *See Estelle,* 429 U.S. at 106. In direct contravention with this principle, Cole uses this lawsuit in an attempt to do just that. Cole admits that he "disagrees with the treatment he received at Stateville … does not believe that he received 'appropriate' treatment at Stateville" and that "he named Dr. Davis in this lawsuit because, in [his] opinion, Dr. Davis did not provide appropriate treatment for his pneumonia. Plaintiff testified that he named Dr. Obaisi in this lawsuit for the same reason." (Dkt. 126, at ¶¶ 67-68). To succeed on a deliberate indifference claim, Cole must go well beyond his own personal dissatisfaction with the medical care he received and establish that Dr. Obaisi and Dr. Davis acted in a manner that is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster,* 439 F.3d 392, 396 (7th

Cir. 2006). Cole impermissibly relies on his own lay opinions of medical treatment to bolster his claims. Instead, when alleging claims under a delay in treatment theory, "the inmate must support his claim with 'verifying medical evidence' to establish that the delay detrimentally affected him." *May v. Snyder,* 166 F. App'x 845, 848 (7th Cir. 2006) (quoting *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996)). Cole has failed to carry his burden of presenting verifying medical evidence that the delay in treatment injured. He cites to nothing in the record which could be construed as verifying medical evidence. Accordingly, for these additional reasons, summary judgment in favor of Dr. Obaisi and Dr. Davis is appropriate.

Claims against the Wexford entity require a distinct analysis. "[P]rivate corporations are treated the same as public organizations for the purpose of the principle, announced in *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that § 1983 does not authorize vicarious liability." *Montague v. Wexford Health Sources, Inc.,* 615 F. App'x 378 (Mem)-379 (7th Cir. 2015). Therefore, "[t]here cannot be vicarious liability without primary liability." *Id.* Wexford cannot be liable for the actions of its employees if those employees are not also liable. *Id.* The developed record leaves little room for imagination on this issue. Plaintiff admits "that he is suing Wexford for the conduct of their employees." (Dkt. 126, at ¶ 69). To the extent that Cole attempts to proceed under a deliberate indifference theory against Wexford, summary judgment is granted in favor of Wexford.

Cole's Second Amended Complaint also challenges Wexford's purported policy of not having a doctor present between the hours of 11:00 p.m. and 7:00 a.m. as being unconstitutional. To succeed here, "plaintiff must demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010). However, the Court cannot even reach the question of the constitutionality of such a policy because there is no evidence in the record that supports the idea that Wexford maintained this policy. Cole did not produce any of Wexford's policy nor does he attempt to cite to any policy in his briefings or Statement of Facts. In fact, it is undisputed that Cole "has never seen any of Wexford's policies." (Dkt. 126, at ¶ 16). A policy cannot be said to violate the constitution without even a scintilla of evidence that the policy actually exists. *See e.g., Gonzalez v. Wexford Health Sources, Inc.,* 2018 WL 272679, at *3 (S.D. Ill. Jan 3, 2018). Again, Cole's own opinion that a policy exists is "not personal knowledge of Wexford's practices, so it does not count as evidence." *Montague v. Wexford Health Sources, Inc.,* 615 F. App'x 378, 379 (7th Cir. 2015) ("One instance of apparently unnecessary delay does not show a policy."); *see also e.g., Arita v. Wexford Health Sources, Inc.,* 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) ("In other words, there are no facts—outside of those related to [plaintiff's] own experience—that plausibly suggest Wexford has maintained a widespread custom or practice of ignoring [] inmates' medical needs."). Cole has simply failed to carry his burden of establishing the existence of a Wexford policy let alone that any policy was unconstitutional. The record therefore leaves no room for a reasonable jury to find in favor of Cole.

For the reasons stated above, summary judgment is granted in favor of the Wexford Defendants.

## II. Defendants Lemke and Barnett

Cole's allegations against the IDOC Defendants take two forms. First, Cole's claim against Lemke challenges the conditions of his confinement while at Stateville—arguing that Lemke displayed deliberate indifference when he ordered Cole's winter coat to be confiscated and disregarded the pain and suffering as a result from his exposure to cold and rain. (Dkt. 83, at ¶ 53). Second, Cole's allegations against Barnett, a Stateville Correctional Medical Technician, mirror those alleged against the Wexford Defendants for delaying medical treatment. *Id.* at ¶ 46.

Before analyzing the applicable law, the Court notes that Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to serve and file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Strict enforcement of the Local Rules is warranted, with the recognition "that district courts are not obliged in our adversary system to scour the record looking for factual disputes …" *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). Where an opposing party fails to comply with its obligations under the Local Rules, the Court must take all facts presented by the moving party and supported by evidence as admitted. *Id.* at 922. Here, Cole has failed to file a response to the IDOC Defendants Statement of

Facts (Dkt. 116) and therefore all of the IDOC Defendants proposed facts supported by the record are deemed admitted.

The deliberate indifference standard detailed *supra* likewise applies to claims challenging an inmate's conditions of confinement. *Wilson v. Seiter,* 501 U.S. 294, 303 (1991); *Dixon v. Godinez,* 114 F.3d 640, 644 (7th Cir. 1997). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Cole's claim against Lemke must fail as the undisputed facts establish that Lemke did not have the requisite personal knowledge to sustain a claim of deliberate indifference. The following pertinent facts are not in dispute. "Plaintiff never spoke to Warden Lemke about his concerns regarding the collection of the coats, his exposure to cold and rain, or his coming down with pneumonia." (Dkt. 116, at ¶ 52). "Plaintiff does not know where Warden Lemke was aware that he came down with pneumonia." *Id.* at ¶ 53. "Plaintiff does not know whether Warden Lemke saw any grievance or letter that he addressed to Lemke … Plaintiff admits that Warden Lemke had left Stateville and was not the warden who responded to his grievance designated M633." *Id.* at ¶ 54. "Plaintiff does not know whether Warden Lemke was personally aware that Plaintiff felt he had inadequate clothing between May and October, 2013." *Id.* at ¶ 55. "Warden Lemke does not recall speaking to Plaintiff

regarding his winter coat, his health, or his medical care." *Id.* at ¶ 56. "Plaintiff appealed a grievance, received May 23, 2013. That grievance was never reviewed by Mr. Lemke …" *Id.* at ¶ 58. "Plaintiff appealed a second grievance, received July 29, 2013. That grievance was also never reviewed by Mr. Lemke …" *Id.* at ¶ 59. Cole does not dispute any of the above statements of fact and cites to no supporting material in the record which would create a triable issue of fact regarding whether Lemke was deliberately indifferent to Cole's condition of confinement. Because Warden Lemke lacked the subjective intent necessary to be liable for an Eighth Amendment claim, summary judgment in favor of Lemke is warranted.

Finally, Cole alleges that Barnett violated his constitutional rights in delaying necessary medical treatment. This claim similarly fails as there is no dispute that Barnett did not have the culpable state of mind to satisfy deliberate indifference. Barnett was not assigned to Cole's cell block and it was not her responsibility for checking on medical requests from inmates outside of her assigned block. *See* Dkt. 116, at ¶¶ 1, 24-27. Barnett arrived at Cole's cell between 10:30 and 10:45 a.m. on June 11, 2013. *Id.* at ¶ 33. Barnett informed Cole that the Health Care Unit would call for him when they were ready for treatment. *Id.* at ¶ 36. At approximately 11:00 a.m. on June 11, 2013, Cole was taken to the Health Care Unit and treated by Dr. Davis. *Id.* at ¶ 47. Cole "does not know whether Ms. Barnett took any action to ensure that he saw [sic] received medical care after she left his cell." *Id.* at ¶ 37. Cole has propounded no evidence establishing Barnett's brief and isolated interaction with Cole rises to the level of deliberate indifference. *Farmer,* 511 U.S. at 837. Beyond

not having acted with a culpable state of mind, Barnett succeeds as a matter of law because Cole fails to carry his burden of putting forth verifying medical evidence that the approximately thirty-minute delay in treatment caused him additional harm. *Langston,* 100 F.3d at 1240.

## **CONCLUSION**

Defendants' Motions for Summary Judgment are granted (Dkts. 115, 117).


Virginia M. Kendall
United States District Judge

Date: March 15, 2019